WELLS (THOMPSON v.). See Case No. 13,-980.

WELLS (UNITED STATES v.). See Cases Nos. 16,661–16,665.

WELLS (WOOD v.). See Case No. 17,967.

## Case No. 17,405.

### WELLS v. WRIGHT et al.

[3 Wash. C. C. 250.] [1]

Circuit Court, D. Pennsylvania. April Term, 1814.

EJECTMENT—SETTLEMENT UNDER WARRANTS—SURVEYS.

1. A party cannot set up a title to land by settlement, prior to the day stated for the commencement of his settlement, in the warrant issued to him for the land; but he may prove the land was never in the possession of the party who claims it from him by the right of settlement.

2. A survey made by order of the board of property, merely to mark the boundary of land claimed by the person for whom it is made, and not in execution of a warrant issued for the land, is not such a survey as will give title.

The plaintiff, to prove his title, gave in evidence, that some time in the year 1771, Samuel Wells, under whom he claims, went upon the land in dispute, girdled some trees, and collected together and burnt a parcel of brush, raised a cabin, but without a roof; and then retired to some other part of the country, where he remained until the next year, when he returned to the land with instruments of agriculture; and finding the land in the occupation of one Boggs, he demanded the possession, which Boggs refused, and forcibly drove Wells off, and burnt the half-finished cabin which Wells had erected. Wells then served an ejectment upon Boggs, and in 1774, he recovered a judgment and took out a writ of possession, which was continued down till some time in the year 1791. In 1774, Wells again went upon the land; erected a small cabin; placed in it some furniture; and during his absence in order to remove the remainder of his furniture, the cabin was burnt, and possession refused to Wells, on his return, by two men, of the names of Link and Backhouse; who, it appears, had settled on the land in 1772, and continued to live, and raise corn on it, until they sold their settlement right to the defendants. In 1791, Wells, the plaintiff, took out a writ of possession in the name of Samuel Wells, against Boggs, and

[1] [Originally published from the MSS. of Hon. Bushrod Washington. Associate Justice of the Supreme Court of the United States, under the supervision of Richard Peters, Jr., Esq.]

had it executed; when the defendants agreed to consider themselves as tenants of the plaintiff, and to pay him a rent, until amicable ejectments, which the defendants agreed to bring against the plaintiff, could be decided; and that if they should be decided in favour of Wells, then, the defendants agreed to deliver him peaceable possession of the premises. These ejectments were tried in 1792, and decided in favour of the present defendants. On the 5th of March, 1785, a warrant issued to the plaintiff for four hundred acres of land, to include the improvements made by Samuel Wells; interest to commence from the 1st of March, 1771, and the consideration was paid in November, of the same year. In the year 1788, the plaintiff filed a caveat in the board of property, against grants issuing to some of the defendants; in consequence of which, the board directed the surveyor to lay off the plaintiff's claim, which was done; and a survey and plat returned, containing five hundred and twenty acres, including a part of each of the tracts claimed by the defendants. The board continued the caveat from day to day, until the ejectments above mentioned should be decided; and in the year 1795, they dismissed the caveat, and ordered patents to issue to such of the defendants as had been caveated.

The defendants claim under warrants, surveys, and patents, regularly obtained; the warrants being all prior in date to the plaintiff's, except the one to Wright, which issued in 1786. The warrants express, that interest is to run from a period subsequent to 1772.

The defendants offered to read depositions, to prove the possession of Link and Backhouse, in 1772, and continued down to the time of their sale to the defendants, or those under whom they claim; which was objected to, because a party can never prove a settlement in himself, or in the person under whom he claims, prior to the time of the settlement stated in his warrant, which is that from which the interest is to run. 2 Smith's Laws Pa. 177, 178.

BY THE COURT. The defendants cannot set up a title by settlement, prior to the day stated for its commencement in the warrant; but they may read the depositions, to show that the land never was in the possession of the plaintiff, by right of settlement.

The objections made to the plaintiff's title, were—(1) That he never had, at any time, made a settlement. (2) That the plaintiff's warrant was never regularly surveyed; and of course, that he does not come within the case of Sims v. Irvine, 3 Dall. (3 U. S.) 425. (3) That the plaintiff is barred, by not having brought his ejectment within six months after the caveat was dismissed. 2 State Laws, April 3, 1792; [Humphries v. Blight] 4 Dall. [4 U. S.] 370. Contra, 2 Smith's Laws, 207, 166; 2 Bin. 114. (4) That the plaintiff is barred by the act of limitations; the possession of the defendants, or those under whom they claim, having been uninterrupted from

1774. 2 State Laws, 282, passed March 26, 1785.

Many cases were cited on both sides, on the point of settlement. 2 State Laws, 487; 2 Smith's Laws, 173, 175, 186, 168, 174, 235, 237, 301, 224, 306; [Ewalt's Lessee v. Highlands] 4 Dall. [4 U. S.] 161; [Morris' Lessee v. Neighman] Id. 210; [M'Laughlin's Lessee v. Dawson] Id. 221; Balfour v. Meade. Id. 175; Add. 216.

WASHINGTON, Circuit Justice (charging jury). The substratum of the plaintiff's title, is settlement. If that be in his favour, and has been followed up with reasonable diligence in obtaining a legal title, he must prevail even against those defendants, whose warrants bear date prior to his. If he has failed in establishing a right by settlement, the verdict must be against him.

What constitutes a settlement, has been repeatedly decided in this, as well as in the state courts of Pennsylvania. It consists in actual occupancy of some part of the land intended to be appropriated, and the continuation of it; thereby manifesting an intention to make it the place of the party's abode, not at some future day, but at and after the day when possession is taken. If he mark off the land he means to settle, and builds even a habitable house, and then leaves it, intending at some future period to return and live in the house so erected, his settlement will commence only from the time when he does return; the building of the house amounts to an improvement only; and if, before he returns, with a view to take possession of the land, and to make it from that time the place of his abode, some other person shall have obtained possession and settled himself on the land, and is found so settled by the first improver, the latter cannot set up an improvement right, against the settlement right thus acquired by the former. Settlement upon these frontier lands, (which the state of Pennsylvania acquired by cession in 1768, at Fort Stanwix,) amounted to an equitable consideration, sufficient to entitle the settler to a grant, even prior to the act of 1786. But it was such a settlement as fulfilled the policy of the government, by presenting a barrier to the savages, and promoting the sale of the public lands to those who might not choose to settle. But vacant cabins, accompanied by declarations of intention to inhabit them at some future period, did not answer the public policy, and of course, amounted to nothing, until the settlement was in fact made. The act of the 30th December 1786, declares what kind of settlement shall give a title to the lands ceded by the treaty at Fort Stanwix—that it must be "an actual residence settlement, with a manifest intention of making it a place of abode, and the means of supporting a family, and continued from time to time, unless interrupted by the enemy, or by going into military service."

The question, then, for your consideration is, whether Wells made such a settlement as

we have described, in 1771, or at any subsequent period. In 1771, he girdled some trees, collected and burned a parcel of brush-wood, raised the logs of a cabin, but without making it habitable; and then returned to his former residence, or retired to the settled parts of the country, intending most probably to return the next year, and to continue on the land which he had thus slightly improved. In 1772, he accordingly returns, with agricultural instruments; and the sincerity of his intention to remain, may fairly be conceded. But in the mean time, Boggs had taken actual possession of the land, having burned the logs of Wells's cabin, and erected another for himself, which he inhabited. Wells considered Boggs to be an intruder upon his land, and endeavoured to gain the possession; Boggs, with much greater propriety, considered Wells as an intruder, and compelled him to quit the premises. Upon what ground Wells obtained a judgment in his ejectment against Boggs, it is impossible to conceive; but, as it appears, that two other persons, Link and Backhouse, obtained the possession, and settled themselves upon the land some time in 1772, it is probable, that Boggs took no farther notice of the suit; in consequence of which, judgment was obtained against him. From 1772, the possession continued in those persons; and, except a temporary possession gained by Wells in 1774, under a writ of possession against Boggs, it does not appear, that Wells, at any period of time, was settled upon this land. He complains, that he was prevented by Boggs and these other men from doing so; but the answer is, that they had a right to keep the possession, because they had acquired a legal title by settlement, in opposition to Wells's claim by improvement, which gave no right whatever. This right, by settlement, being followed up by a regular office title, must prevail against the improvement and office title of the plaintiff.

But independent of the better right of the defendants, the plaintiff has not, in the opinion of the court, such a title as will support an ejectment in this court. In the case of Sims v. Irvine, 3 Dall. [3 U. S.] 425, the supreme court decided, that a warrant, survey, and consideration paid, vests a legal right of entry into lands lying in this state; but the survey ought to be in execution of the warrant, and such as would entitle the party to a patent. Now, in this case, the order of the board of property was to survey the claim, not to execute the warrant of the present lessor of the plaintiff; and in laying down this claim, it is made to cover five hundred and twenty, instead of four hundred acres; and this by interfering with all the defendants. Now, it may be admitted, that if the only title to this excess, adverse to the plaintiff's. had been that of a state, a patent would have issued, upon the plaintiff paying the sum demanded by the state; but not so, if it interfered with the claims of third per-

sons. One thing is clear, that the lessor of the plaintiff, if he had a title against the defendants, to any part, is not entitled to five hundred and twenty acres, and cannot obtain a patent for it; how, then, can this court locate for him, the quantity to which he claims to be legally entitled, so as to enable him to recover, in any one of these ejectments? Upon the first point, however, the court is of opinion, that the defendants are entitled to verdicts.

Plaintiff suffered a nonsuit.